CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 21, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MALIK AL-SHABAZZ,** | )<br>) |
| Petitioner, | )<br>) Case No. 7:22CV00713<br>) |
| v. | ) **OPINION**<br>) |
| **J. C. STREEVAL, WARDEN,** | ) JUDGE JAMES P. JONES<br>) |
| Respondent. | )<br>) |

*Malik Al-Shabazz, Pro Se Petitioner; Justin M. Lugar, Assistant United States Attorney,* OFFICE OF THE UNITED STATES ATTORNEY, *Roanoke, Virginia, for Respondent.*

Malik Al-Shabazz, a federal inmate proceeding pro se, filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] He contends that prison officials have deprived him of sentence credit he has earned under the First Step Act of 2018 (FSA). He asserts that he should have received such credit because he has obtained his high school diploma from a correspondence school. After review of the record, I conclude that the respondent is entitled to judgment on the merits.

---

[1] The record indicates that when Al-Shabazz filed his § 2241 petition, he was confined at the United States Penitentiary Lee (USP Lee), located within this judicial district.

I.

Al-Shabazz is serving a 94-month federal criminal sentence in the custody of the Federal Bureau of Prisons (BOP). His projected release date is March 20, 2025. In his petition, he alleges that the BOP is not correctly calculating his good conduct time under the FSA. Specifically, Al-Shabazz complains that BOP staff conducting classification proceedings have refused to give him points for the high school diploma that he earned through a correspondence school.[2] He contends that if he received credit for this degree, he would qualify for application of good time credit he has earned against his sentence under the FSA.[3]

The respondent has filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. The respondent's motion is supported by a declaration by Destiny Spearen, a paralegal who has access to and has reviewed records on Al-

---

[2] In response to Al-Shabazz's administrative remedy number 1121923-F1, staff informed him that BOP "determines that inmates can satisfy mandatory educational requirement [sic] in one of two ways: 1) a diploma from a traditional 3 or 4 year high school or 2) a General Educational Development (GED) credential issued by the American Council on Education." Pet. Ex., at 3, ECF No. 1-1. Staff further explained that the correspondence school diploma did not meet either of these requirements and would not be accepted for BOP classification purposes. Staff informed Al-Shabazz that to receive credit for a high school education, he would be "required to attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." *Id.* at 4.

[3] Al-Shabazz also asserts that credit for the diploma would reduce his custody level. He does not explain how this custody level issue rises to a deprivation of rights under the Constitution or federal law. In any event, he is barred from pursing the claim by his failure to exhaust administrative remedies, as explained herein.

Shabazz's incarceration in SENTRY, the BOP computer database that tracks BOP inmates' status, activities, and administrative remedies. Mem. Supp. Mot. Summ. J. Ex. 1, Spearen Decl., ECF No. 8-1. The court notified Al-Shabazz of his opportunity to respond to the motion, but the time allotted for his response has elapsed, and he has not responded.

As discussed herein, Spearen's undisputed evidence is that Al-Shabazz did not properly exhaust his high school diploma claim through all available levels of the BOP grievance procedure. In addition, attached documentation tracks BOP assessments of Al-Shabazz's recidivism risk and the programing provided to him since 2021. Spearen's undisputed evidence also shows that Al-Shabazz is ineligible to receive good time credit he has earned and continues to earn under the FSA, because he has not been assessed as a low or minimum risk of recidivism.

## II.

Although § 2241 does not contain a statutory exhaustion requirement, courts ordinarily require petitioners to exhaust available administrative remedies prior to seeking habeas review under § 2241. *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *United States v. Mercado*, 37 F. App'x 698, 699 (4th Cir. 2002) (unpublished) (upholding dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241 petition).

The BOP has a multi-level administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. 28 C.F.R. §§ 542.10–542.19. The inmate must first attempt informal resolution of his issue by presenting his complaint to staff, using a form commonly referred to as a BP-8. If that effort is unsuccessful, the inmate may then submit a Request for Administrative Remedy, referred to as a BP-9. These two steps are to be completed within twenty days of the occurrence that is the subject of the inmate's complaint. If the inmate is not satisfied with the warden's response to the BP-9, he has twenty days to file a Regional Administrative Remedy Appeal, known as a BP-10, that will be answered by the Regional Director. If dissatisfied with the Regional Director's response, the inmate has thirty days to file a Central Office Administrative Remedy Appeal, known as a BP-11, which is directed to the BOP Central Office. A BP-11 is the final administrative level of review. No administrative remedy appeal is fully exhausted until it is decided on the merits by staff in the BOP Central Office.

The undisputed evidence is that Al-Shabazz complained about not getting credit for his correspondence high school diploma by filing a BP-8 and BP-9 remedy at the institutional level, No. 1121923-F1, and a BP-10 regional appeal, No. 1121923-R1, all of which were accepted and adjudicated. The Regional Appeal reviewer rejected Al-Shabazz's BP-10 on August 11, 2022. Al-Shabazz did not file a Central Office appeal, No. 1121923-A1 until October 31, 2022, well outside the

30-day permitted time to file such an appeal. Al-Shabazz contends that he did not receive the response to the BP-10 until October 18, 2022, but he does not provide any documentary support for this receipt date. He submits a copy of a grievance he filed on August 22, 2022, claiming that he had not received a response to his BP-10, but this filing did not reference the unique Remedy ID number assigned to his initial remedy filings to assist in tracking his appeal. Also, in the Central Office appeal itself, Al-Shabazz does not mention his purported late receipt of the Regional Appeal denial or otherwise explain why he was so late in filing the Central Office appeal.

On October 31, 2022, the Central Office rejected the appeal, but left open an opportunity for Al-Shabazz to resubmit the appeal with verification that the untimely filing was not his fault. Al-Shabazz did not submit any such verification or resubmit the appeal with the explanation that he provides to the court about why his Central Office appeal was delayed. Because it is undisputed that his Central Office appeal was not timely filed, and that he failed to make any attempt to explain this delay to the Central Office staff, I conclude that Al-Shabazz abandoned the exhaustion process. His failure to exhaust administrative remedies properly before filing his § 2241 petition is grounds for dismissal of this action.[4] However, the respondent's

---

[4] Failure to exhaust may be excused only by a showing of cause and prejudice. *McClung*, 90 F. App'x at 445. As stated, however, Al-Shabazz failed to offer evidence contradicting the respondent's exhaustion evidence, and he also failed to show cause for his failing to do so.

undisputed evidence indicates that Al-Shabazz's high school diploma claim regarding FSA sentence credits is also clearly without merit.

III.

The FSA provides inmates the opportunity to earn 10 to 15 days of good time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A). The earned credits can be applied toward earlier placement in prerelease custody or to reduce a term of supervised release. 18 U.S.C. § 3632(d)(4)(C).

The FSA mandated the development and implementation of an assessment system for people in federal custody to gauge and reduce the risk of recidivism. As a partial answer to this mandate, the BOP developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN). Among other things, the PATTERN system is designed to: (1) determine an inmate's recidivism risk; (2) assess his risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce his risk of reoffending; (4) regularly assess his recidivism risk and programming needs; and (5) determine when he is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). Each inmate's PATTERN score is periodically determined by assigning point values to factors such as current age; severity of the current offense(s); sex offender status; prison rule infractions or incidents, including seriousness and timing; participation

in drug treatment, work, and education programming; history of violence; and history of escape. 18 U.S.C. § 3632.

Under the FSA and related regulations, inmates with any PATTERN score (with some exceptions) may earn FSA sentence credits, but only those inmates with low and minimum PATTERN scores for recidivism risk can have the credits applied to their sentence. 28 C.F.R. § 523.42 (explaining how inmates earn FSA sentence credits); 28 C.F.R. § 523.44 (limiting application of FSA sentence credits to eligible inmates who also have "demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment"). Thus, inmates with PATTERN scores of medium or high risk of recidivism, like Al-Shabazz, can earn FSA sentence credits, but they are ineligible to have the credits applied to reduce custody or supervised release until their recidivism assessment is reduced to minimum or low risk. *Holmes v. Sage*, No. 1:22-CV-923, 2022 WL 2791755 (M.D. Pa. July 15, 2022) (denying habeas relief under 28 U.S.C. § 2241 because Holmes had a medium risk of recidivism).

Thus, to be eligible for the FSA sentence credits Al-Shabazz seeks, he would have to achieve a recidivism risk assessment of minimum or low. As stated, Al-Shabazz contends that if BOP staff credited him with the high school diploma he earned from the correspondence school, he would qualify to have FSA good time

credits applied against his sentence. The respondent's undisputed evidence and the FSA itself refute this assertion.

Al-Shabazz has a recidivism risk assessment of high. While he has earned some sentence credits under the FSA based on programing in which he has participated, his high risk of recidivism prevents him from having those sentence credits applied against his sentence. Evidence included with the respondent's motion demonstrates that giving Al-Shabazz credit for his high school diploma would not change his risk assessment score.

The primary factor causing Al-Shabazz's PATTERN assessment as a high risk for recidivism is his criminal history that gives him forty points. This criterion is static. His score also includes five points based on his history of violence. He is assigned another fourteen points because his age falls in the range of 41-50 years old, and he will be 48 years old on his projected release date. The total points from these factors are reduced by nine points, because he has no need for drug treatment while in prison. Thus, his total score is 50 points.

To reduce total points in the PATTERN tool to achieve a minimum or low risk status, Al-Shabazz would need to change his score from 50 points to 30 points or less. With less than two years left to serve, such a reduction is not possible. For the reasons stated, his criminal history points and his age points will not change before his expected release date. He also cannot increase the credit he is receiving

against his score based on his drug treatment status. If he refrains from any acts of violence during his remaining term of confinement, at the most, his risk score could be reduced by two points. Most importantly for his current claim, if given credit for his correspondence high school diploma, his score would be reduced by only four points. A score of 44 or above places a male inmate in the high risk category, and a score between 31 and 43 places him in the medium risk category where he would still be ineligible to receive credit for sentence credits he has earned under the FSA.

I commend Al-Shabazz for his efforts at rehabilitation and education. However, these factors do not make him eligible for the credit he seeks to reduce his term of confinement or supervised release under the FSA.

### III.

For the stated reasons, I will grant summary judgment to the respondent and dismiss the § 2241 petition with prejudice.

A separate Judgment will be entered herewith.

DATED: March 21, 2024

/s/ JAMES P. JONES
Senior United States District Judge